

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

_____

No. 07-15-00164-CV
No. 07-15-00165-CV
No. 07-15-00166-CV
_____

DANNY LEE SHEAD, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 181st District Court
Randall County, Texas
Trial Court Nos. 8460-B, 8461-B & 19154-B; Honorable John B. Board, Presiding

August 11, 2015

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

By restricted appeals, Appellant, Danny Lee Shead, challenges three separate *nunc pro tunc* orders to withdraw funds from his inmate account entered pursuant to section 501.014(e) of the Texas Government Code.  Shead was incarcerated for

offenses relating back to the 1990s.[1]  On June 6, 1994, in cause number 8460-B, he was placed on deferred adjudication community supervision for ten years for indecency with a child.  At the same time, in cause number 8461-B, he was convicted of sexual assault, sentenced to ten years confinement, suspended for ten years, and assessed a $1,000 fine.  On April 1, 1996, he was adjudicated guilty of indecency with a child (cause number 8460-B), his deferred adjudication community supervision was revoked, and he was sentenced to ten years confinement.  That same day, in cause number 8461-B, his community supervision was also revoked and the original sentence of ten years was imposed.  Shead did not appeal from these judgments.

In October 2005, Shead was unconditionally discharged.  He was later charged and convicted in 2008 of failing to comply with sex offender registration requirements in cause number 19154-B.  The conviction was enhanced and he was sentenced to twelve years confinement and assessed a $1,000 fine.  Again, Shead did not appeal.

On February 25, 2010, almost fourteen years after his initial incarceration, more than four years after being discharged in cause numbers 8460-B and 8461-B, and more than two years after his conviction and incarceration in cause number 19154-B, the trial court signed an *Order to Withdraw Inmate Funds* in each of the three cases.  More than four years after that, on May 22, 2014, the trial court entered a *Nunc Pro Tunc Order to Withdraw Funds* in each case.  These three orders are the genesis of these appeals.

On July 21, 2014, Shead filed objections to each *nunc pro tunc* order and again challenged the orders via motions to rescind on September 23, 2014.  On January 6,

---

[1] Mr. Shead has recently been released.  In July 2015, he advised this court he was no longer incarcerated and had transient release status.

2015, the district clerk filed a letter from Shead requesting that the motions be brought to the attention of the court. Shead did not receive notice of submission and no hearing was held on his motions. On January 8, 2015, the trial court signed orders denying him relief.

After Shead filed these appeals, the State moved to dismiss them on the ground he had not satisfied the requirements to pursue restricted appeals. The State's motion was denied,[2] and briefs were filed in all three appeals.[3] Shead presents four issues that can be distilled to two arguments: (1) the *nunc pro tunc* orders authorizing withdrawal of funds from his inmate account deprived him of property without due process protections such as notice or a proper writ of garnishment and (2) attorney's fees were assessed in violation of article 26.05(g) of the Texas Code of Criminal Procedure. By its briefs, the State argues Shead was not deprived of procedural due process because there is no error apparent on the face of the record pertaining to the withdrawal orders.

Shead argues the trial court's withdrawal orders are void. He questions the trial court's authority to enter withdrawal orders on judgments that have already become final and on judgments he claims ceased to exist after his unconditional discharge. Relying on *Abdullah v. State*, 211 S.W.3d 938, 943 (Tex. App.—Texarkana 2007, no pet.), in which the court determined that Abdullah was not accorded procedural due process when funds were withdrawn from his inmate account without protections

---

[2] *Shead v. State*, Nos. 07-15-00164-CV, 07-15-00165-CV, & 07-15-00166-CV, 2015 Tex. App. LEXIS 6596, at *6 (Tex. App.—Amarillo June 25, 2015, order).

[3] Shead filed two separate briefs on the same date, both bearing all three cause numbers with the second brief containing an additional issue on attorney's fees not included in the first brief. The arguments presented are similar and will be addressed simultaneously. The State filed three separate briefs, one in each cause number.

3

required in a garnishment proceeding, Shead questions the validity of the trial court's orders.

Finally, relying on *Mayer v. State*, 309 S.W.3d 552 (Tex. Crim. App. 2010), Shead challenges the trial court's failure to find he had the ability to pay court-appointed attorney's fees. He also questions the manner in which his payments were allocated.

### ORDERS TO WITHDRAW FUNDS

Texas prisoners have a property interest in their inmate accounts. *Harrell v. State*, 286 S.W.3d 315, 319 (Tex. 2009); *Abdullah v. State*, 211 S.W.3d 938, 943 (Tex. App.—Texarkana 2007, no pet.). In *Harrell*, the Supreme Court determined that an order to withdraw funds from an inmate account is civil in nature and examined what process is due an inmate. In balancing the following factors: (1) the privacy interest affected, (2) the risk of erroneous deprivation of that interest through the procedures used and the probable value of additional or substitute procedural safeguards, and (3) the government's interest, the Court concluded Harrell had "already received some measure of due process." *Harrell*, 286 S.W.3d at 320 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). The Court concluded that because Harrell had received notice of the withdrawal (via a copy of the withdrawal order) and an opportunity to contest the dollar amount and statutory basis of the withdrawal (via a motion to rescind or modify the withdrawal notification),[4] he received all that due process required. *Id.* at 321. The Court added that neither notice nor an opportunity to be heard need occur before the issuance of a withdrawal order. *Id.* This

---

[4] The trial court denied Harrell's *Motion to Rescind. See Harrell v. State*, Nos. 07-06-0469-CR, 07-06-0470-CR, 2007 Tex. App. LEXIS 6416, at *2 (Tex. App.—Amarillo Aug. 13, 2007), *rev'd*, 286 S.W.3d 315 (Tex. 2009).

court has interpreted *Harrell* as saying that due process requires that an inmate have an opportunity to contest the dollar amount and statutory basis of the withdrawal by way of a motion to modify, correct, or rescind the withdrawal order. *Williams v. State*, 332 S.W.3d 694, 698 (Tex. App.—Amarillo 2011, pet. denied). In sum, due process is satisfied if the inmate receives notice and the opportunity to be heard *after* funds are withdrawn. *Id.*

### STANDARD OF REVIEW

We review a trial court's decision to deny a motion contesting a withdrawal order according to an abuse of discretion standard. *Id.* at 698. A trial court abuses its discretion when it acts "without reference to any guiding rules and principles." *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 31 (Tex. 2010) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)). A trial court abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985).

### COURT-APPOINTED ATTORNEY'S FEES

Attorney's fees are compensatory and non-punitive. *Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011). If a trial court determines that a defendant has financial resources that enable him to repay, in whole or in part, the costs of legal services provided by a court-appointed attorney, the court has authority to order a convicted defendant to pay "as court costs the amount that it finds the defendant is able to pay." *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2014). A trial court

errs if it orders reimbursement of court-appointed attorney's fees without record evidence demonstrating a defendant's financial resources to offset the costs of legal services. *Mayer*, 309 S.W.3d at 552.

Article 26.05(g) and *Mayer* notwithstanding, the Texas Court of Criminal Appeals has held that a complaint concerning the assessment of court-appointed attorney's fees as a condition of community supervision is forfeited if not raised by direct appeal at the time community supervision was first imposed. *Riles v. State*, 452 S.W.3d 333, 338 (Tex. Crim. App. 2015) (citing *Wiley v. State*, 410 S.W.3d 313, 320-21 (Tex. Crim. App. 2013), *Manuel v. State*, 994 S.W.2d 658, 661-62 (Tex. Crim. App. 1999)). *Riles* made no decision on attorney's fees assessed for a revocation hearing. 452 S.W.3d at 338.

### FINES

Fines are punitive and they are intended to be part of a convicted defendant's sentence as they are imposed pursuant to chapter 12 of the Texas Penal Code entitled "Punishments." *Armstrong*, 340 S.W.3d at 767. Thus, they are collectible by means of an order to withdraw funds regardless of a defendant's ability to pay. *Williams*, 332 S.W.3d at 700.

### COURT COSTS

Court costs assessed against convicted defendants are compensatory in nature. *Armstrong*, 340 S.W.3d at 767. The Legislature intended them as a non-punitive "recoupment of the costs of judicial resources expended in connection with the trial of the case." *Weir v. State*, 278 S.W.3d 364, 366 (Tex. Crim. App. 2009). Where court

costs are imposed as a matter of legislative directive, they do not need to be included in the oral pronouncement of sentence or the written judgment in order to be imposed upon a convicted defendant. *See id.* at 367 (holding that because legislatively mandated court costs are not punitive, they did not have to be included in the oral pronouncement of sentence as a precondition to their inclusion in the trial court's written judgment); *Smith v. State*, Nos. 07-09-00009-CR & 07-10-00010-CR, 2010 Tex. App. LEXIS 3846, at *21 (Tex. App.—Amarillo May 20, 2010, pet. ref'd) (mem. op., not designated for publication) (holding that a precise dollar amount of court costs did not have to be specified in the oral pronouncement of sentence or the written judgment as a precondition to their inclusion in the clerk's bill of costs). A certified bill of costs imposes an obligation upon a criminal defendant to pay court costs, irrespective of whether or not that bill is incorporated by reference into the written judgment. *See generally* TEX. CODE CRIM. PROC. ANN. arts. 103.001 (West 2006), 103.003 (West Supp. 2014). *See also* TEX. GOV'T CODE ANN. §§ 102.001-103.034 (West 2013 and Supp. 2014). Legislatively mandated court costs are properly collectible by means of a withdrawal order regardless of ability to pay. *Williams*, 332 S.W.3d at 700.

**ANALYSIS**

According to *Harrell*, an inmate receives all that due process requires when he receives a copy of the withdrawal order and has an opportunity to contest the dollar amount and statutory basis for the withdrawal, albeit after the funds are withdrawn. 286 S.W.2d at 321. Shead contested the orders to withdraw by filing objections and motions to rescind those orders in the trial court. His contests were all denied. Shead's reliance on *Abdullah* and similar cases notwithstanding, the trial court's withdrawal orders meet

7

the procedural due process protections discussed in *Harrell.* The trial court did not abuse its discretion in entering the *Nunc Pro Tunc Orders to Withdraw Funds.*[5] Shead's first issue is overruled.

Regarding Shead's second issue challenging assessment of attorney's fees and allocation of payments, we find several errors apparent on the face of the records before us. We evaluate each cause number separately to address those errors.

### TRIAL COURT CAUSE NUMBER 8460-B

In 1994, in exchange for a plea of guilty, Shead was placed on deferred adjudication community supervision for indecency with a child. One of the conditions of his community supervision was payment of a $1,000 fine. The 1994 *Bill of Costs* reflects an assessment of $84.50 for basic court costs, $325 for court-appointed attorney's fees, and a $1,000 fine totaling $1,409.50.

In 1996, Shead was adjudicated guilty of indecency with a child and the judgment reflects a sentence of ten years confinement. The $1,000 fine was not included in the judgment.

In February 2010, the trial court entered an *Order to Withdraw Inmate Funds* pursuant to section 501.014(e) of the Texas Government Code in an amount of $1,529.50. Then, on May 22, 2014, the trial court entered a *Nunc Pro Tunc Order to Withdraw Funds* in an amount of $1,052.44. A new *Bill of Costs* prepared on May 14,

---

[5] Another of Shead's complaints was the lengthy delay between his judgments of conviction and the trial court's *nunc pro tunc* withdrawal orders. After a trial court's plenary power expires, a clerical error may be corrected by a *nunc pro tunc* order at any time. TEX. R. CIV. P. 329b(f).

8

2014, shows an assessment of $1,489.50 ($1,000 fine + $325 attorney's fees + $194.50 court costs) and payments totaling $417.56.

Because the fine was not included in the *Judgment Adjudicating Guilt,* it was improperly assessed in the *Bill of Costs* dated May 14, 2014. The attorney's fees agreed to by Shead as a condition of community supervision were properly assessed because he did not contest them by direct appeal at the time they were assessed. *Riles v. State*, 452 S.W.3d at 338. Legislatively mandated costs and fees are also owed regardless of ability to pay. *Weir*, 278 S.W.3d at 366. Therefore, deleting the improperly assessed $1,000 fine from the total assessment of $1,489.50 and applying payments of $417.56, the *Order to Withdraw Inmate Funds* in this cause number should reflect a balance of $71.94.

### TRIAL COURT CAUSE NUMBER 8461-B

In 1994, pursuant to a plea bargain, Shead was convicted of sexual assault in exchange for ten years community supervision and a $1,000 fine. The 1994 *Bill of Costs* reflects an assessment of $84.50 for basic courts costs, $225 for court-appointed attorney's fees, and a $1,000 fine, totaling $1,309.50.

In 1996, Shead's community supervision was revoked and the judgment reflects the punishment assessed as ten years confinement. The $1,000 fine included in the 1994 judgment was not carried forward to the 1996 judgment.

In February 2010, the trial court entered an *Order to Withdraw Inmate Funds* pursuant to section 501.014(e) of the Texas Government Code in an amount of

9

$1,109.50. Then on May 22, 2014, the trial court entered a *Nunc Pro Tunc Order to Withdraw Funds* in an amount of $969.44. A new *Bill of Costs* prepared on May 14, 2014, shows an assessment of $1,389.50 ($1,000 fine + $225 attorney's fees + $164.50 court costs) and payments of $420.06.

The fine was not included in the *Judgment Revoking Probation* and was improperly assessed in the *Bill of Costs*. The attorney's fees agreed to by Shead as a condition of community supervision were properly assessed because he did not contest them by direct appeal at the time they were assessed. *Riles*, 452 S.W.3d at 338. Therefore, deleting the improperly assessed $1,000 fine from the total assessment of $1,389.50 and applying payments of $420.06, the *Order to Withdraw Inmate Funds* in this cause number should reflect a zero balance.[6]

### TRIAL COURT CAUSE NUMBER 19154-B

In 2008, Shead was convicted of failure to comply with sex offender registration requirements and was sentenced to twelve years confinement and assessed a $1,000 fine. The judgment accurately reflects his sentence and fine. The 2008 *Bill of Costs* reflects an assessment of $241.50 for basic court costs, $50 for peace officer fees, $1,000 for court-appointed attorney's fees, and a $1,000 fine totaling $2,291.50.

In February 2010, the trial court entered an *Order to Withdraw Inmate Funds* pursuant to section 501.014(e) of the Texas Government Code in an amount of

---

[6] As set forth in our conclusion below, we make no decision regarding the allocation of Shead's payments to the total assessments because the only issue before this court is the propriety of the withdrawal order issued to the Texas Department of Criminal Justice. That said, it would appear prudent for the district clerk to apply the credit balance in this cause to the balance due in either cause numbers 8640-B or 19154-B.

$2,291.50. Then on July 7, 2014, the trial court entered a *Nunc Pro Tunc Order to Withdraw Funds* in an amount of $900. A new *Bill of Costs* prepared on May 14, 2014, shows an assessment of $2,291.50 ($1,000 fine + $1,000 attorney's fees + $291.50 court costs), and payments totaling $1,005.06.

Shead was never on community supervision for failure to register as a sex offender. Thus, *Riles* does not apply and the assessment of attorney's fees in the amount of $1,000 was improper without the trial court making a finding that Shead had an ability to pay them. TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2014); *Mayer*, 309 S.W.3d at 553. The $1,000 fine is properly assessed. Legislatively mandated costs and fees are also owed regardless of ability to pay. *Weir*, 278 S.W.3d at 366. Therefore, deleting the improperly assessed attorney's fees of $1,000 from the total assessment of $2,291.50 and applying payments of $1,005.06, the *Order to Withdraw Inmate Funds* in this cause number should reflect a balance of $286.44.

### CONCLUSION

In trial court cause number 8460-B, we delete the improperly assessed $1,000 fine from the total assessment of $1,489.50 and apply payments of $417.56, leaving a balance of $71.94. In trial court cause number 8461-B, we delete the improperly assessed $1,000 fine from the total assessment of $1,389.50 and apply payments of $420.06, leaving a credit of $30.56. Finally, in trial court cause number 19154-B, we delete the improper assessment of $1,000 for court-appointed attorney's fees from the total assessment of $2,291.50 and apply payments of $1,005.06 leaving a balance of $286.44.

We make no decision on the allocation of Shead's payments to the total assessments. The Randall County District Clerk is ordered to prepare amended bills of costs in each case reflecting the proper assessments and credits, and further, to provide copies of the same to this court as well as to Shead. As modified by this opinion, the trial court's *Nunc Pro Tunc Orders to Withdraw Funds* are affirmed.


Patrick A. Pirtle
Justice